IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| ALFONSO ALVEREZ BANDA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 113-070 |
| ) | (Formerly CR 109-133) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner, an inmate at La Tuna Federal Correction Institution in Anthony, Texas, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.  BACKGROUND

On September 2, 2009, a federal grand jury for the Southern District of Georgia charged Petitioner, along with a co-defendant, in a two-count indictment. Count One charged conspiracy to distribute 500 grams or more of a mixture of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged possession with intent to distribute not less than 500 grams of a mixture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). U.S. v. Banda, CR 109-133, doc. no. 1 (S.D. Ga. Sept. 2, 2009)

(hereinafter "CR 109-133"). As set forth in the penalty certification and as explained by the Court to Petitioner at his arraignment, each count carried a statutory penalty of not less than ten years nor more than life imprisonment. CR 109-133, doc. nos. 2, 8. Pursuant the Criminal Justice Act, the Court appointed attorney Jacque Hawk to represent Petitioner. Id., doc. nos. 4, 32.

Petitioner, a native of Mexico, required the services of an interpreter during the course of his proceedings in federal court. The non-certified interpreter appointed by the Court appeared at the initial appearance and arraignment (id., doc. nos. 8, 13, 19), and Mr. Hawk obtained the services of a certified interpreter, Mr. Luis Navarro, to assist him in communicating with Petitioner throughout the proceedings in this case. See id., doc. nos. 54, 86, 98, 112-20. Presiding United States District Judge J. Randal Hall likewise appointed Mr. Navarro to serve as interpreter during the pre-trial conference, trial, and sentencing in the case. See id., doc. nos. 102, 125. Mr. Navarro appeared without objection by any party throughout the case.

Months before trial and again on the morning of trial, the government offered Petitioner a plea agreement which included a stipulated sentence of sixty months of imprisonment. (Doc. no. 1, p. 5; doc. no. 3-1 (Aff. of Jacque Hawk), ¶ 3; doc. no. 3-2 (Aff. of Luis Navarro), ¶ 8; CR 109-133, doc. no. 60.) Petitioner declined the offers. Indeed, throughout the proceedings, Petitioner maintained his innocence, adamantly telling Mr. Hawk that he refused to consider any plea offers and testifying at trial as to innocence. (Navarro Aff., Ex. B.) In fact, on August 10, 2010, Petitioner wrote (as translated):

> I, Alfonso Banda, hereby declare by my signature and this document swear under penalty of perjury that I have maintained my innocence during all the hearings against me. I have stated to my lawyer Jacque Hawk that I will never [accept or assert] offers brought to me by the government. I have waited patiently for my jury trial. I have waited for this trial since January 2010.

Id. Approximately one week after Petitioner swore never to accept a plea offer from the government, Mr. Hawk filed a motion to withdraw based on assertions that Petitioner would not listen to counsel's legal advice. CR 109-133, doc. no. 68. After holding an *ex parte* hearing with defense counsel and Petitioner, the Court denied the motion to withdraw (id., doc. no. 73), and the case proceeded to trial. The morning of jury selection, Petitioner again declined a plea offer from the government containing a sixty-month stipulated sentence. Navarro Aff. ¶ 8.

At trial, Edward Cash, a federal prisoner serving a sentence for conspiracy to distribute more than 500 grams of methamphetamine, testified that in 2005 he started purchasing pounds of iced methamphetamine from Petitioner, at first, "about every couple of weeks" but then every week.[1] CR 109-133, doc. no. 123 (Trial Transcript), pp. 117-22. Mr. Cash paid Petitioner $15,200 to $16,000 per pound, and then he would sell the ice in ounces. Id. at 123. Mr. Cash testified that at the time he was arrested, he had been receiving two pounds of methamphetamine per week from Petitioner. Id. Mr. Cash also testified that his former girlfriend, Lynn Coulson, helped him arrange the deal with Petitioner to buy methamphetamine that led directly to Petitioner's arrest. Id. at 124-27, 142, 155.

---

[1]Mr. Cash explained that "ice" is a purer from of methamphetamine. Trial Tr., p. 122.

Ms. Coulson testified as to the details of the arrangement she made with law enforcement to set up the purchase of two pounds of methamphetamine from Petitioner in the parking lot of a Waffle House in Augusta, Georgia.[2] Upon meeting Ms. Coulson, Petitioner told her that he was five ounces short of a full two pounds of methamphetamine, but he would give it to her next time. Id. at 89. Law enforcement officers then arrested Petitioner and collected almost two pounds of methamphetamine (short approximately five ounces) and $1,027 from Petitioner and his vehicle. Id. at 38, 189. The jury saw and heard recordings of the Waffle House transaction. Id. at 32-37, 73-108.

Petitioner maintained his innocence at trial, and after a warning from Judge Hall as to the rights he would waive by testifying on his own behalf, took the witness stand. Id. at 180-82. Petitioner testified under oath that he believed he was meeting a woman at the Waffle House who "wanted a boyfriend." Id. at 188, 194. Petitioner denied ever being involved in drugs of any kind and claimed that he had been framed for the drugs discovered in his vehicle. Id. at 188-91, 195-201. Petitioner also testified that Ms. Coulson's testimony regarding the methamphetamine package being five ounces short was mistaken because he actually said, in broken English, that he had arrived at the Waffle House at 5:11 p.m. Id. at 197, 200-01.

The jury acquitted Defendant of the conspiracy charge in Count One of the indictment but convicted him on Count Two, possession with intent to distribute a mixture of methamphetamine weighing 500 grams or more. Id. at 212; CR 109-133, doc.

---

[2]Ms. Coulson agreed to cooperate in the hopes Mr. Cash would receive time off of his prison sentence. Trial Tr., pp. 74-75.

no. 92, pp. 1-2. The United States Probation Office then prepared a Presentence Investigation Report ("PSI"), to which no objections were filed. CR 109-133, doc. no. 131 (Sentencing Transcript), p. 4. The PSI calculated an advisory Sentencing Guidelines range for imprisonment at 235 to 293 months, which included an offense-level enhancement of two to the base offense level of 34 because of Petitioner's leadership role, and another two-level enhancement for obstruction of justice because Petitioner provided materially false testimony at trial while under oath. PSI ¶¶ 14, 17, 20, 21. Judge Hall sentenced Petitioner at the bottom of the Guidelines range to 235 months of imprisonment. On appeal, Petitioner argued that Judge Hall did not properly consider his age (72) and infirmities at sentencing, but the Eleventh Circuit affirmed the 235-month sentence as procedurally and substantively reasonable. U.S. v. Banda, 477 F. App'x 561, 562 (11th Cir. 2012) (*per curiam*).

Petitioner next timely filed the instant ¶ 2255 motion claiming that he received ineffective assistance of counsel for two reasons. First, he asserts that Mr. Hawk provided ineffective assistance during the plea bargaining process because even though counsel conveyed the government's plea offer that contained a stipulated sixty-month sentence, Mr. Hawk failed to "fully explain" Petitioner's sentencing exposure were he to choose to go to trial. (Doc. no. 1, p. 4.) In the affidavit submitted in support of his motion, Petitioner swears that he was apprised "of the government's plea offer of a sixty month sentence. However [Mr. Hawk] did not inform the movant, that he would receive a 235 month sentence if the movant preceded [sic] to trial." (Id. at 7.) Second, Petitioner claims that Mr. Hawk failed to make sure that the interpreter was "correctly explaining" counsel's advice to Petitioner. (Id. at 4.) In an explanation that seemingly contradicts the

5

first claim that counsel did not explain sentence exposure at trial, Petitioner states as to his second claim, "[C]ounsel failed to assure that the Movant's Interpreter were adequately explaining counsel advice to Movant likely results of proceeding to trial and sentencing exposure after trial [sic]." (Id.) The affidavit simply states that the "interpreter did not fully explain to the movant, movants sentence if the movant preceded to trial [sic]." (Id. at 7.) The government timely filed its opposition to the § 2255 motion, asserting that Petitioner's claims all fail on the merits. (Doc. no. 3.)

After the Court granted a belated request for an extension of time to reply to the government's response (doc. nos. 6-8), Petitioner claims for the first time that he "was and is completely deaf[] in one ear and has no more than a 20% to 30% hearing in the other ear" (doc. no. 8, p. 7).[3] Petitioner claims that Mr. Hawk provided ineffective assistance of counsel for not raising this disability to the Court and not hiring an interpreter "who could deal with disable[d] individuals." (Id.) Petitioner also raises, for the first time, an argument bereft of any factual or legal support that Mr. Hawk was ineffective for not objecting to the Guidelines enhancements in the PSI for Petitioner's leadership role and obstruction of justice. (Id. at 13.) Petitioner concludes that his motion "should be granted and the plea agreement 're-offered' so the Petitioner could plea guilty and receive a sentence of 60 months." (Id.)

---

[3]Petitioner also claims to suffer from a condition he identifies as "Age Macro degeneration or AMD," which allegedly caused his hearing loss. (Doc. no. 8, p. 7.) Although Petitioner does not describe how his AMD caused him to lose his hearing, according to one medical source, AMD or Age-Related Macular Degeneration causes loss of vision, not hearing. See http://www.webmd.com (last visited May 15, 2014). Petitioner has not claimed any problems with his sight.

## II. DISCUSSION

### A. There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). As the Eleventh Circuit has explained, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. U.S., 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations. Lynn v. U.S., 365 F.3d 1225, 1238-39 (11th Cir. 2004) (*per curiam*); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that a petitioner is not entitled to an evidentiary hearing if his "claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citing Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*en banc*)).

With regard to ineffective assistance of counsel claims, the Eleventh Circuit has recognized that an evidentiary hearing "is often required for development of an adequate record." Vick v. U.S., 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. As described in detail below, the Court finds that Petitioner's claims lack merit as a matter of law and/or are otherwise affirmatively contradicted by the record. Thus, the Court **REPORTS** and **RECOMMENDS** that this

matter be resolved without an evidentiary hearing.

  **B. All of Petitioner's Ineffective Assistance of Counsel Claim Lack Merit.**

    **1. Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. U.S.</u>, 538 U.S. 500, 505 (2003). Petitioner must show that counsel was constitutionally ineffective under the two prongs of <u>Strickland</u> by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. U.S.</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the

8

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. U.S., 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

The two-part Strickland inquiry applies with equal force to ineffective assistance of counsel claims raised regarding the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Nor is there any doubt the Sixth Amendment guarantee of effective assistance of counsel applies "to the negotiation and consideration of plea offers that lapse or are rejected." In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (*per curiam*) (citing Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012) and Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012)). To satisfy the prejudice prong of the Strickland test in the context of plea negotiations, a petitioner must demonstrate a reasonable probability that: "(1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would

have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence." Frank v. U.S., 522 F. App'x 779, 781 (11th Cir. 2013) (*per curiam*) (citing Frye, 132 S. Ct. at 1409 and Lafler, 132 S. Ct. at 1384-85).

### 2. Petitioner Has Not Shown Entitlement to Relief Based on Claim that He Did Not Understand Sentencing Exposure After a Trial.

Petitioner fails to satisfy either prong of the Strickland standard with respect to his first claim that Mr. Hawk did not "fully explain" Petitioner's sentencing exposure were he to choose to go to trial. (Doc. no. 1, p. 4.) In his original, sworn § 2255 motion, Petitioner concedes that Mr. Hawk informed him of the sixty-month plea offer from the government, but contends that he did not understand the severity of the sentence he faced by rejecting the government's offer. (Id.) In his unsworn reply, Petitioner attempts to backtrack by asserting that Mr. Hawk failed "to adequately communicate the Government[']s offer of a 60 month plea deal or the 19 and a half year sentence" he would receive if he went to trial. (Doc. no. 8, p. 7.) Having never raised the issue before, Petitioner now also claims that he is deaf in one ear and has no more than 20% or 30% hearing in the other ear such that his hearing loss makes him disabled; thus, he purportedly could not hear Mr. Hawk and by extension, any advice about sentencing that was provided.[4] (Id.)

---

[4] The Court presumes that the "adequate communication" qualification is related to Petitioner's hearing issue not only because of Petitioner's original sworn statement that he was informed of the government's sixty-month plea offer, but also because the record contains minutes from a pre-trial conference in which Judge Hall granted a continuance of a trial date to "allow for more consideration of plea agreement." CR 109-133, doc. no. 60.

Most damaging to his first claim of ineffective assistance of counsel is Petitioner's sworn protestations of innocence both before and during the trial, protestations which eviscerate any potential showing of prejudice that would be necessary to satisfy the Strickland standard.[5] Prior to trial, Petitioner adamantly maintained his innocence and stated he would never accept an offer from the government to plead guilty, (Navarro Aff., Ex. B), and nowhere in his § 2255 papers does Petitioner disavow or otherwise challenge that pre-trial affidavit. Petitioner also took the stand at trial and testified under oath that he had no involvement with drugs and had been framed. Trial Tr., pp. 188-91, 195-201. Because of these repeated statements of innocence, Petitioner cannot satisfy the necessary prejudice prong of Strickland that requires a showing he would have accepted a plea offer but for counsel's ineffective assistance. Osley v. U.S., -F.3d-, No. 11-14989, 2014 WL 1399419, at *7-8 (11th Cir. 2014) (finding that repeated claims of innocence severely undermined the petitioner's after-conviction assertion that he would have taken plea agreement); Frank, 522 F. App'x at 781 (rejecting ineffective assistance of counsel claim where record showed the petitioner would not accept any plea offer requiring registration as a sex offender – a term that government's rejected plea agreement contained); Oliver v. U.S., 292 F. App'x 886, 887-88 (11th Cir. 2008) (*per curiam*) (claiming innocence throughout trial and sentencing undermines claim that a petitioner would have accepted a plea agreement); Diaz v. U.S., 930 F.2d

---

[5]As the government offered the sixty-month plea agreement on the morning of trial, and that sentence is lower than the 235-month sentence imposed, the Court focuses its analysis on the first requirement for showing prejudice in the context of plea negotiations: whether the plea would have been accepted. Frank, 522 F. App'x at 781.

11

832, 835 (11th Cir. 1991) (rejecting claim of ineffective assistance of counsel where the petitioner pointed to no evidence that prior to trial he was interested in pleading guilty but rather only argued after his conviction that the rejected plea deal would have given him a lesser sentence).

In addition to failing to meet the prejudice prong of Strickland, Petitioner also fails to show that Mr. Hawk's performance was deficient in any way. The original motion attached an affidavit stating that he was not informed that he would receive a 235-month sentence if he went to trial. (Doc. no. 1, p. 7.) While he may not have been informed of the exact sentence he would receive, he knew as early as his first appearance in Court that the statutory penalty for both charges ranged from ten years to life in prison. CR 109-133, doc. nos. 2, 8. Moreover, Mr. Hawk could never predict the *exact* sentence Petitioner would receive; that determination is reserved to the presiding District Judge, U.S. v. Hamilton, 428 F. Supp.2d 1253, 1254-55 (M.D. Fla. 2006). Thus, to the extent Petitioner is complaining that he knew he faced a significantly stiffer sentence - but not the exact length of the sentence – if he went to trial, no reasonable attorney would have promised a specific sentence of any type.

Moreover, Petitioner's claim that he was not aware of his sentence exposure were he to go to trial is belied by the record at every turn. First, at the initial appearance and arraignment, the Court informed Petitioner of possible penalties for the crimes with which he had been charged. CR 109-133, doc. no. 8. The penalty certification clearly stated that he faced a sentence of not less than ten years nor more than life imprisonment for each count charged in the indictment. Id., doc. no. 2. That Mr. Hawk also filed

motions to withdraw and for continuances based on assertions that more time was needed to review a government plea offer and Petitioner would not listen to his advice on how to proceed in the case also undercuts Petitioner's claim that Mr. Hawk was not advising him about the negative outcomes that might occur by going to trial. See, e.g., id., doc. nos. 60, 68. Thus, to the extent Petitioner now claims that Mr. Hawk was not giving him the proper advice that he needed to "understand" the sentencing exposure he faced, that claim rings hollow.

As to the belated claim that Petitioner is nearly deaf -a claim which is completely devoid of any factual support – the Court need not consider claims that are raised for the first time in a reply brief. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005). But even if the Court were to assume that Petitioner's belated allegations about his hearing loss were true, they do not change the Court's analysis of Mr. Hawk's performance. Petitioner's original, sworn filing in this case avers that he knew about the government's sixty-month plea deal. (Doc. no. 1, pp. 4, 7.) Both Mr. Hawk and Mr. Navarro submitted affidavits stating that the terms of the government's offer of a sixty-month stipulated sentence and the possibility of a sentence up to life imprisonment if convicted trial were communicated to, and understood by, Petitioner. (Hawk Aff. ¶¶2-4; Navarro Aff. ¶¶ 3-7.) Petitioner does not claim that he ever told Mr. Hawk, Mr. Navarro, or the Court that he was hard of hearing or that such an infirmity prevented him from understanding or communicating with Mr. Hawk or the interpreter.[6] An attorney can

---

[6]Indeed, even in the PSI where there is a separate section that details a defendant's physical condition, Petitioner described back problems, occasional spells of vertigo, some ringing in his ears, trouble walking, and feeling like he is falling. PSI, ¶ 41. He reported no hearing problems of the scale and severity he does now.

only be reasonably expected to act on information provided by his client. Strickland, 466 U.S. at 690-91; Pooler v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1269, 1271 (11th Cir. 2012). Petitioner's after-the-fact assertion that Mr. Hawk should have known he was nearly deaf, when nothing in Petitioner's words or actions suggested such, does not form a valid basis for an ineffective assistance of counsel claim.[7]

In a nutshell, the Court "should be wary of [claims like Petitioner's] because defendants will always want the best of both worlds: the chance of acquittal at trial, yet the chance to plead guilty if the trial defense fails." U.S. v. Day, 969 F.2d 39, 46 n.9 (3d Cir. 1992). Petitioner had his chance to take a plea deal but chose to reject it. He repeatedly told counsel that he would never accept a plea agreement, and Petitioner testified at trial, under oath, that he did not commit the crimes charged in the indictment. That Petitioner's choice to go to trial resulted in a significantly longer sentence than what was offered in the plea agreement does not amount to ineffective assistance of counsel, and Petitioner is not entitled to relief on Ground One of his motion.

### 3. Petitioner Has Not Shown Entitlement to Relief Based on Claim of Improper Interpreting of Counsel's Advice.

Petitioner also fails to satisfy either prong of the Strickland standard with respect to his second claim that Mr. Hawk provided ineffective assistance of counsel by hiring Mr. Navarro as an interpreter. (Doc. no. 1, p. 4.) In a claim that appears, at least in part,

---

[7]Petitioner's reference (doc. no. 8, p. 7) to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, a statute that prohibits discrimination in employment, has no bearing on Petitioner's criminal proceedings. Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000) ("The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.").

to contradict Petitioner's first contention that Mr. Hawk did not advise him of his sentence exposure after a trial, Petitioner claims in his second ground for relief that Mr. Navarro did not adequately convey the advice given by Mr. Hawk. (Id.) According to Petitioner, because he suffered from the disability of being nearly deaf, Mr. Hawk should have hired an interpreter who was specially qualified to deal with disabled individuals. (Doc. no. 8, p. 12.) Tellingly, however, Petitioner's explanation of this claim is not that he failed to actually hear the government's plea offer of sixty months or any other advice from Mr. Hawk, but rather that he "did not understand the meaning of 'severe sentence.'" (Id.) Thus, in the ever-shifting landscape of Petitioner's § 2255 motion, he has gone from claiming in Ground One that Mr. Hawk did not advise him about sentence exposure, to claiming in Ground Two that Mr. Hawk did advise him about facing a severe sentence if he went to trial, but Mr. Navarro somehow did not properly convey that advice.

Petitioner fails to show that Mr. Hawk's performance was deficient in any way when he hired Mr. Navarro as an interpreter. Of course, the purpose of hiring an interpreter was that Mr. Hawk did not speak sufficient Spanish to communicate with Petitioner; it was certainly not constitutionally deficient for Mr. Hawk to rely on a federally certified interpreter rather than attempt to learn the Spanish language in order to make sure that the interpreter was correctly interpreting his advice to Petitioner.[8] Moreover, the use of certified and non-certified interpreters is clearly contemplated in federal courts, as evidenced by the authorization of payment for expert services of an

---

[8]Indeed, there would be no need for an interpreter if Mr. Hawk had been so well versed in Spanish that he could double check what the interpreter was telling Petitioner.

interpreter in the case. CR 109-133, doc. nos. 54, 108, 109, 112-20. Indeed, Judge Hall relied on the services of the very same interpreter for the proceedings conducted in his courtroom. Id., doc. nos. 74, 86, 98, 102.

As explained in detail, *supra*, there is nothing in the record to suggest that Petitioner, by his words or actions, conveyed to Mr. Hawk or Mr. Navarro that he needed a special accommodation or additional aid to understand the interpreter because of a hearing problem. Mr. Hawk performed in an objectively reasonable manner when he hired Mr. Navarro, an interpreter certified by the National Administrative Office of the Courts (Navarro Aff. ¶ 2) and used by Judge Hall during Petitioner's court proceedings.

In addition to failing to meet the deficient performance prong of Strickland Petitioner also cannot show the requisite prejudice concerning any variation of his claim concerning Mr. Navarro. Mr. Navarro submitted a sworn affidavit that he translated the government's plea offer orally and in writing in Petitioner's dialect of Spanish, (Navarro Aff. ¶¶ 3, 5-6), and Petitioner does not dispute that he was aware of the terms of the offer, and in particular the stipulated sixty-month sentence. Importantly, Petitioner never identifies exactly what Mr. Navarro is alleged to have incorrectly translated; he simply states he did not understand the import of "severe sentence." Nor does Petitioner challenge the validity of Exhibit B to the Navarro Affidavit wherein he swore that he was innocent of the charges and would *never* accept a plea offer from the government. (Id., Ex. B). The *unsworn* statement in Petitioner's reply brief that he would have accepted the government's plea offer but for counsel's failure to hire an interpreter certified to deal with an undisclosed hearing problem (doc. no. 8, p. 13), is flatly contradicted by his prior

*sworn* statements previously discussed herein. He knew he faced a "severe sentence" if he rejected the plea offer, and he had known since his first Court appearance that he faced a possible statutory sentence of life in prison.

In sum, Petitioner is not entitled to relief on Ground Two of his motion.

### 4. Petitioner Has Not Shown Entitlement to Relief Based on the Belated Allegation of Sentencing Error.

Similar to his claim of deafness, Petitioner also raises for the first time, without providing any factual detail, a claim that Mr. Hawk provided ineffective assistance of counsel because he failed to object to the enhancements in the Guidelines calculations in the PSI for Petitioner's leadership role and obstruction of justice. (Doc. no. 8, p. 13.) As explained above, a claim raised for the first time in a reply brief is not properly before the Court. Herring, 397 F.3d at 1342; see also Cooper v. Sec'y, Dep't of Corr., 8:08-cv-5-T-27MAP, 2011 WL 795812, at *7 (M.D. Fla. Mar. 1, 2011) ("Petitioner did not raise this claim in his petition, did not seek leave to amend to add this claim, and is barred from raising it in his Reply, since Respondent has not been afforded an opportunity to address it."). Even if the Court were to consider the claim, it is without merit because Petitioner cannot satisfy both prongs of the Strickland test.

The PSI assessed a total of a four-level enhancement: a two-level enhancement for obstruction of justice based on the jury's rejection of Petitioner's exculpatory testimony given under oath and a two-level enhancement for his leadership role in organizing the criminal activity and utilizing his co-defendant as an interpreter to further his methamphetamine distribution activity. See PSI ¶¶ 14, 20, 21. Even if the Court were to assume "for analytic purposes" that the enhancements resulted in an increased

sentence that could satisfy the prejudice prong, Petitioner cannot satisfy the deficient performance prong because he offers absolutely no viable basis upon which Mr. Hawk might have objected to these enhancements.[9] The testimony at trial supported the conclusions in the PSI. A witness testified that Petitioner arranged the sale of methamphetamine for which he was convicted and that Petitioner's co-defendant translated on behalf of Petitioner to set up the transaction. Trial Tr., p. 78. Petitioner also testified as to his innocence, claiming he was set up. Id. at 188-91, 195-201. Even though Mr. Hawk stated at sentencing that there were no objections to the PSI, Judge Hall also asked Petitioner if wanted to make any statement. Sent. Tr., pp. 6-7. When given the chance, Petitioner said nothing - nothing about having any objections to the PSI or any other aspect of the proceedings. (Id. at 7.) He therefore fails to satisfy the deficient performance prong of the Strickland test, and even if this belated claim were properly before the Court, Petitioner is not entitled to relief.

---

[9]Petitioner's citation to Glover v. U.S., 531 U.S. 198 (2001), in support of his claim, is but a red herring. (Doc. no. 8, p. 13.) In that case, the Supreme Court assumed "for analytic purposes" that the trial court erred in a Guidelines determination that increased a sentence by as much as six to twenty-one months and then concluded that the District Court erred in its Strickland analysis by concluding that the increase in sentence "was not significant enough to amount to prejudice." Glover, 531 U.S. at 199-200, 202. The Supreme Court held that it was improper to engraft the additional requirement of a "significant" increase in sentence to the prejudice prong of the Strickland analysis but did not conclude that the petitioner had shown that he received constitutionally ineffective assistance of counsel because the lower court never addressed the deficient performance prong; thus, the issue of deficient performance was not before the Court, and the case was remanded for further proceedings. Id. at 204-05. Here, even if the Court were to assume for the sake of argument that an increase in sentence resulting from a four-level enhancement satisfied the prejudice prong, as discussed above, Petitioner has not shown that Mr. Hawk's performance was deficient.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 16th day of May, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA